UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| FRANCISCO SOSA | : | |
| | : | |
| v. | : | C.A. 05-123ML |
| | : | |
| ASHBEL T. WALL, Director of Department of Corrections | : | |

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

Before this Court is Francisco Sosa's ("Petitioner" or "Sosa") Petition for Habeas Corpus (the "Petition") brought under 28 U.S.C. § 2254 (Document No. 1). Petitioner attacks judgments of conviction for first-degree murder and unlawful possession of a firearm affirmed by decision of the Rhode Island Supreme Court (the "RISC") on December 22, 2003. Petitioner filed his Petition *pro se* on March 25, 2005. Respondent, Ashbel T. Wall, Director of Department of Corrections for the State of Rhode Island (the "State"), filed a timely response to the Petition (the "Response") (Document No. 3) on April 13, 2005.

The Petition has been referred to me for preliminary review, findings and recommended disposition. See 28 U.S.C. § 636(b)(1)(B); D.R.I. Local R. 32(c). The Court has determined that no hearing is necessary. After reviewing the Petition and the Response, in addition to performing independent research, this Court recommends that the Petition for Habeas Corpus (Document No. 1) be DISMISSED WITH PREJUDICE as lacking legal merit.

**Facts and Travel**

Petitioner stands convicted by a Rhode Island Superior Court jury of first-degree murder and possession of a firearm without a license. See Response at 2. He was sentenced to life

imprisonment. See id. In June 2000, Petitioner was first tried for the murder of Hugo Andino and for unlawful possession of a firearm. State v. Sosa, 839 A.2d 519 (R.I. 2003). This first trial resulted in a mistrial due to the jury's inability to reach a unanimous verdict. Id. at 523. Then, in October 2000, Sosa received a second jury trial and was found guilty of first-degree murder and possession of a firearm without a license. Id. His Motion for a new trial was denied on November 10, 2000, and on January 16, 2001, the trial justice imposed a mandatory life sentence for the first-degree murder conviction and a ten-year sentence on the illegal weapon charge. Id. at 523-24. Petitioner appealed his convictions to the RISC. Id. at 522. On December 22, 2003, the RISC affirmed the Petitioner's convictions. See Id. Petitioner now seeks habeas corpus review of his convictions by this Court.

The facts underlying Petitioner's convictions are detailed in the opinion of the RISC and are summarized as follows:[1]

The initial conflict between Sosa and his neighbor began in July 1998 during an afternoon cookout hosted by Bethzaida Vega ("Vega"). Sosa, 839 A.2d at 522. The party was attended by Vega's friend Wanda Cruz ("Cruz"), Vega's neighbor LaTesha Tate ("Tate"), and Tate's friends, Erica Cambero ("Cambero") and Hugo Andino ("Andino"). Id. As the party ended, an altercation ensued between Sosa and Cruz, concerning an earlier fight between their sons. Id. The altercation culminated in Sosa knocking Cruz to the floor. Id. Andino, the decedent, chased Sosa away from the property with a kitchen knife immediately following the incident. Id.

---

[1] A full outline of the factual and procedural background to this case is set forth in the Rhode Island Supreme Court's December 22, 2003 Decision. See Sosa, 839 A.2d 519 (R.I. 2003).

Approximately three days later, Sosa went to Tate's apartment looking for Vega. Tate, who was playing cards and drinking beer with Cambero, Andino and another male, did not open the door, but observed Sosa through the peephole. Id. at 522-23. A few minutes later, Sosa appeared outside the living room window of Tate's apartment and yelled to Andino saying: "I am going to get you." Id. at 523.

When Vega arrived home a short time later, Tate reported Sosa's threatening remarks. Id. Upon hearing this, Vega went outside to retrieve her two children. Vega then observed Sosa, gun in hand, climbing the fence that divided the two yards. Id. Vega yelled a warning towards Tate's apartment that Sosa was approaching with a gun. Id. Tate, Cambero, and Andino ran toward the front porch of their apartment to bring Vega's two-year old son inside. Id. At this point, Cambero witnessed Sosa approach Andino, and as Andino reached down to pick up the child, Sosa shot him in the back. Id. Andino was taken to Rhode Island Hospital where he died during emergency surgery. Id.

**Discussion**

After the RISC affirmed the ruling of the trial court upholding his convictions, Sosa filed this Petition. Petitioner asserts five grounds for relief, four of which were previously considered by the RISC on appeal. See Petition at 2-6. His four exhausted grounds are as follows: the trial court (1) made an erroneous evidentiary ruling; (2) improperly refused to give the jury a second-degree murder instruction; (3) permitted a constitutionally infirm jury panel; and (4) improperly denied his new trial motion. As an unexhausted claim, Petitioner asserts a ground of "ineffective counsel" with regard to his post-conviction appeal but not as to his Superior Court trial. See id. at 5-6.

**State's Motion for Summary Judgment**

The State moves for Summary Judgment arguing that the factual findings of the RISC must be presumed to be correct, and the Petitioner's Motion for Habeas Corpus lacks legal merit. See Response at 5-7. With the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") 28 U.S.C. § 2254, Congress restricted the power of federal courts to grant habeas relief to prisoners. This Court is guided in the consideration of Petitioner's claims by 28 U.S.C. § 2254(d)(1), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;...

The State properly cites McCambridge v. Hall, 303 F.3d 24 (1st Cir. 2002), for its guidance on applying the "unreasonable application" portion of § 2254(d)(1). McCambridge states that "'some increment of incorrectness beyond error is required'...[in an amount] great enough to make the [state court's] decision unreasonable in the independent and objective judgment of the federal court..." Id. at 36 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2nd Cir. 2000)). For example, a federal court may find a decision of a state court to be "unreasonable" if that decision is "devoid of record support for its conclusions or is arbitrary." Id. at 37 (citing O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998)). In Williams v. Taylor, 529 U.S. 362, 411 (2000), the Supreme Court noted that an "incorrect" application of federal law is not necessarily tantamount to an "unreasonable" one: "a federal habeas court may not issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

Another category of state court errors that may be remedied on federal habeas review involves unreasonable determinations of fact. See 28 U.S.C. § 2254(d)(2). Under this standard, the state court's factual findings are entitled to a presumption of correctness that can be rebutted only by clear and convincing evidence to the contrary. Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001) (describing burden on habeas petitioner as a "high hurdle"). In this case, because Petitioner fails to demonstrate by clear and convincing evidence that the factual findings of the state courts were arbitrary or unreasonable, this Court must presume the factual findings of the RISC and Rhode Island Superior Court to be correct. Accordingly, there are no unresolved issues of material fact present, and the Court may resolve Petitioner's habeas challenges as a matter of law.

**Ground One**

As his first ground for relief, Petitioner asserts that the RISC erred in affirming the admission of "the prior recorded testimony of Antonio Gonzales." See Petition at 2. Mr. Gonzales testified in the first trial of the Rhode Island Superior Court (the mistrial). See id. The State was unable to locate Mr. Gonzales to testify at the second trial, and the trial justice, applying Rhode Island's Rules of Evidence, determined that the witness was "unavailable." As a result, the trial justice allowed the jury to hear Gonzales's recorded testimony from the previous trial. See id. Petitioner argues that this amounted to a violation of his constitutional right to "confront his accuser before a jury of his peers." See id. In reviewing the lower court's decision, the RISC held that the trial justice had not abused his discretion in allowing the prior recorded testimony to be admitted. Sosa, 839 A.2d at 525. The decision of the RISC marks the end of the inquiry into Petitioner's first ground by this Court.

It is not the duty of the federal courts to review the evidentiary findings of the state courts in federal habeas corpus proceedings. The First Circuit Court of Appeals has stated that "[h]abeas review does not ordinarily extend to state court rulings on the admissibility of evidence." Puleio v. Vose, 830 F.2d 1197, 1204 (1st Cir. 1987). The applicable case law articulates a high burden for a petitioner seeking such relief. See, e.g., DiBenedetto v. Hall, 176 F. Supp. 2d 45 (D. Mass. 2000). In order to "rise to constitutional magnitude," a petitioner must show that the erroneous state court evidentiary rulings "infuse[d] the trial with inflammatory prejudice as to render a fair trial impossible." Allen v. Snow, 635 F.2d 12, 15 (1st Cir. 1980) (quotation omitted). Accordingly, Petitioner has not met his burden of persuading this Court that the state court's allegedly erroneous evidentiary ruling rendered a fair trial impossible. The RISC thoroughly considered his challenge to the trial justice's ruling and noted that "Sosa's attorney thoroughly cross-examined Gonzales at the first trial" and thus, "had the opportunity to develop Gonzales's previous testimony through cross-examination." Sosa, 839 A.2d at 524. As such, Petitioner's first ground for relief fails as a matter of law.

**Ground Two**

Petitioner's second claim for relief asserts that the trial justice erred "in refusing to instruct [the] jury on the offense of murder in the second degree." See Petition at 3. Petitioner contends that the facts of the case supported a second-degree murder instruction, and that the jury had even questioned the trial justice about lesser degrees of murder. See id. at 3, 4. This Court agrees with the State that this is not a ground cognizable in federal habeas review, except in cases where the error is so egregious that it rises to constitutional proportions. This clearly is not such a case. In Rogers v. Carver, 833 F.2d 379 (1st Cir. 1987), the First Circuit Court of Appeals held that although a *state*

court of appeals might be quite critical of jury instructions, the same does not hold true for federal courts on habeas review. The habeas petitioner has a high burden to meet – "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Cupp v. Naughten, 414 U.S. 141, 147 (1973).

In the present case, the trial justice properly exercised his discretion to refuse to give a second-degree murder instruction based on the totality of the evidence presented at trial. Even if he should have given such an instruction, his claimed error does not rise to a constitutional proportion sufficient to warrant habeas relief. Accordingly, Petitioner's second ground for relief fails as a matter of law.

**Ground Three**

Petitioner's third claim for relief asserts that the trial justice erred in "summarily denying the defense motion to dismiss the jury panel due to the systematic exclusion of minorities therefrom." See Petition at 4. Petitioner claims that the trial justice erred by not bringing in a new jury panel after his defense counsel objected that "no minorities were present on the jury panel from which his jury was to be drawn." See id. A panel of approximately forty prospective jurors was called of whom only two were of minority ethnicity. See id. After one was excused for cause, defense counsel moved to have the jury panel dismissed for violation of the Sixth Amendment's "fair cross-section requirement." See id. The RISC upheld the decision of the trial justice on the grounds that the objection to the jury pool was untimely and that defense counsel made no showing of "systematic exclusion" as required to assert such a claim. Sosa, 839 A.2d at 528.

The United States Supreme Court has held that racial discrimination in jury selection is valid grounds for setting aside a criminal conviction, but only when a prima facie case of such

discrimination has been established. Rose v. Mitchell, 443 U.S. 545 (1979). The Supreme Court has not detailed explicitly what might constitute a prima facie case. However, in Batson v. Kentucky, 476 U.S. 79 (1986), the Court suggested that a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Petitioner did not make a "Batson challenge" in this case.

In Brewer v. Marshall, 119 F.3d 993 (1st Cir. 1997), a prisoner applied for habeas relief on the grounds that the trial judge had permitted the prosecution to make racially motivated challenges. Id. at 997. During jury impanelment, the prosecutor exercised three rounds of his preemptory challenges, including challenges to four black jurors. Id. At the end of these three rounds, defense counsel objected on the ground that the prosecution had purposefully sought to eliminate black jurors. Id. The trial judge overruled on the grounds that such an objection should have been made earlier. Id. In reviewing the prisoner's Petition, the First Circuit concluded that the ruling made by the trial judge was an "independent state procedural ground" and not subject to review by the federal courts. Id. at 1000. It stated that "[t]he Supreme Court has thus largely left the question of what constitutes a prima facie case [of racial discrimination in jury selection] to the wisdom of trial judges themselves." Id. at 1004. In this case, the trial justice's decision concerning the untimeliness of defense counsel's objection was an independent state procedural ground and is not subject to federal habeas review. In addition, the RISC conducted a thorough and comprehensive analysis of this claim, correctly applying Supreme Court precedent. Accordingly, this Court agrees with the State that "Petitioner's 'jury panel' contention, cannot in any way be characterized as an 'unreasonable application of clearly established federal law, as determined by the Supreme Court of the United

States' (28 U.S.C. § 2254d(1))." See Response at 14. Accordingly, Petitioner's third ground for relief fails as a matter of law.

**Ground Four**

Petitioner next argues that "the trial court's denial of the motion for a new trial was against the weight and sufficiency of the evidence." See Petition at 5. However, "[a] federal court reviewing a habeas petition is concerned only with the *sufficiency* of the evidence, not its weight." Rodriguez v. Maloney, 299 F. Supp. 2d 1, 2 (D. Mass. 2004) (emphasis added). A federal court reviewing a habeas petition must usually accept the evidence in the light most favorable to the government. Jackson v. Virginia, 443 U.S. 307, 334 (1979). The Supreme Court has held that a petitioner for habeas relief has an exceedingly high standard to meet in showing that the verdict was against the sufficiency of the evidence. He must show that upon the evidence adduced at trial "no rational trier of fact could have found proof of guilt beyond a reasonable doubt..." Id. at 324. In this case, Petitioner has not met this burden. A review of the record in the light most favorable to the State convinces this Court that a rational fact finder could readily have found the Petitioner guilty beyond a reasonable doubt under Rhode Island law. The denial of Petitioner's Motion for a new trial was within the discretion of the trial justice and was not clearly erroneous. Thus, the denial cannot be characterized as an "unreasonable application" of federal law. 28 U.S.C. § 2254(d)(1). Accordingly, Petitioner's fourth ground for relief fails as a matter of law.

**Ground Five**

The fifth and final ground raised by Petitioner – "ineffective counsel in not notifying Mr. Sosa of a direct appeal from the State Court to the Federal Court, thereby allowing over twelve months to pass while giving the impression that the appeal process was ongoing." See Petition at

5. This is the only claim not reviewed before the RISC on appeal. Id. at 6. This unexhausted claim renders the Petition "mixed." The Supreme Court has previously held that a "mixed" habeas petition is not reviewable by federal district courts because doing so would deprive states of the first opportunity to decide a claim. Rose v. Lundy, 455 U.S. 509, 514 (1982). More recently, however, the Court has clarified its position on such "mixed" habeas petitions. In Rhines v. Weber, 125 S. Ct. 1528 (U.S. 2005), the Supreme Court held that a district court may issue a "stay and abeyance" order which would allow a petitioner to present his unexhausted claims to the state court and then to return to federal court for review of his perfected habeas petition. Id. at 1531. However, such an order is to be made at the discretion of the particular district court and should be "available only in limited circumstances." Id. at 1535. A district court would "abuse its discretion" if it were to grant a stay to a petitioner "when his unexhausted claims are plainly meritless." Id.

In deciding whether to issue a "stay and abeyance" order, I am bound to consider the nature of the claim (ineffective counsel). The Supreme Court has set the standard of review quite high for ineffective assistance of counsel claims. In Strickland v. Washington, 466 U.S. 668, 686 (1984), the Court held that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." In this case, Petitioner's claim falls far short of meeting this standard. The Petition does not assert that counsel was ineffective during the trial process or that the result of the trial itself has been affected, but merely claims that defense counsel should have informed him about the federal habeas process during the appeal process. This allegation is "plainly meritless" and thus is not a sufficient ground for granting a "stay and abeyance" order because defense counsel's claimed failure to inform a client about post-conviction federal review could never

affect the result of the previously conducted trial. Petitioner has not shown how he has been prejudiced in any way by this claimed "ineffective counsel." His substantive arguments were thoroughly considered by the RISC and have again been considered on the merits by this Court pursuant to 28 U.S.C. § 2254. Accordingly, Petitioner's fifth ground for relief fails as a matter of law.

**Conclusion**

For the foregoing reasons, I recommend that Petitioner's Motion for Habeas Corpus (Document No. 1) be DISMISSED WITH PREJUDICE and that the District Court enter final judgment in favor of Defendant. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt. See Fed. R. Civ. P. 72(b); D.R.I. Local R. 32. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

LINCOLN D. ALMOND
United States Magistrate Judge
June 3, 2005